AMERICAN AUTOMOBILE INSURANCE ASS'N v. LEO PEARSON, Trading as Try-Me Bottling Co.

150 So. 725.

Division A.

Opinion Filed November 10, 1933.

*Roswell King, E. W. & R. C. Davis* and *Waller & Pepper* for Plaintiff in Error;

*Evan Evans,* for Defendant in Error.

ELLIS, J.—Leo Pearson was engaged in business under the name of Try-Me Bottling Company. He owned and used in his business five auto trucks for the purpose of transporting the beverage which he sold in bottles. He had procured from the American Automobile Insurance Association a policy of accident insurance in the sum of ten thousand dollars covering each of the five trucks against loss resulting from the manipulation or use of the automobiles by reason of liability imposed by law upon the "subscriber" for damages resulting from injury accidentally inflicted upon any person not in the employment of the subscriber or related to him by blood or marriage. The damage was limited to five thousand dollars for personal injuries and one thousand dollars for property damage.

The policy contained a clause providing that it did not cover loss or damage resulting or arising while the automobile truck was operated or driven by any person "under the influence of intoxicating liquor, or while said automobile is being used or engaged in the transporting of intoxicating liquor, or for any purpose in violation of any State or Federal law."

Mr. Pearson had a young man named Gandy in his employment as truck driver of one of the Reo trucks. On Sunday, the 3rd of November, 1929, Gandy was in the City of Brunswick, Georgia, with the truck. About eleven o'clock in the morning Gandy drove the truck to a place called Crooked River to visit an eating place in that neighborhood owned and operated by a woman known as Mrs.

Carter whom Gandy had known in Florida. Gandy ate his midday meal there, procured a half-pint of corn whiskey and a bottle of orange crush, drank it and started back toward Brunswick. Mrs. Carter's place is about thirty-five miles south of Brunswick on the Brunswick-Jacksonville Highway, U. S. Highway No. 17.

After traveling about thirty-one miles northward on the highway and when he was within four or four and one-half miles southward of Brunswick Gandy drove the truck he was driving into a Hudson Sedan which was going southward on the highway. The collision occurred on the west side of the road, on the left side of the road from Gandy's position, and on the right side from the sedan's position, and clearly within the latter's area of the road according to the law of the road. The accident resulted in the serious injury of one person in the sedan and slight injury comparatively to another, while a third person passenger in the sedan was unhurt. The truck turned over and was destroyed by fire which broke out immediately. Gandy was burned on the arm and sustained a slight cut on the posterior part of his body where a tin tobacco container was broken and a sharp corner of it was driven into his flesh producing a slight wound.

The person in the automobile who sustained the serious injury, Mr. Herbert C. Bachus, sued Pearson and recovered judgment in the sum of fifteen thousand dollars.

Leo Pearson, in January, 1931, brought an action in the Circuit Court of Duval County against the American Automobile Insurance Company upon the insurance policy. The defendant pleaded that Gandy, the driver of the truck at the time of the accident was under the influence of intoxicating liquor. There was a verdict for the plaintiff for six thousand dollars and interest from January 30, 1931, and

nine hundred dollars attorneys' fees, making a total of seven thousand, three hundred and sixty dollars.

A motion for a new trial principally on the ground that the verdict was contrary to the weight or preponderance of the evidence and excessive in amount was made. The motion was denied and the Insurance Company took a writ of error.

The only question presented and the one to which the brief of plaintiff in error is limited, is whether the affirmative defense interposed by the Insurance Company was established by the evidence. The oral argument was directed to that proposition and the attorneys for the respective parties spoke eloquently and learnedly upon the probative force of certain symptomatic conditions as indicative not necessarily of a state of inebriety but of a mental or spiritual mellowness that weakens the sense of moral and legal obligations and superinduces a carelessness and indifference to the rights of others.

A discussion of the evidence in the case would be of little benefit. Much evidence was given of a conflicting character as to the symptoms of inebriation displayed by the young man Gandy some hour or so after the incident had occurred, which in ordinary cases would normally have a sobering influence upon even an intoxicated person. The truck had turned over and caught fire, the driver was wounded in the posterior part of his body by a slight cut, or as one counsel put it, a deep and painful wound, his arm was burned, his employer's truck ruined by his carelessness, he was badly beaten by an indignant member of the automobile party, Gandy had escaped in fear from further indignant manifestations of that nature, he had fled to a store about three-quarters of a mile away, procured a bottle of soda water and drank that, was then arrested and taken

in town to a physician and thence to a hospital about an hour or an hour and a half after the escapade on the highway.

We were not enlightened by counsel as to whether such incidents in the indiscreet conduct of an inebriate have a sobering tendency upon the unfortunate one, neither does our experience or observation of such things shed much light on the question, but we have heard that fear sometimes produces a steadying or sobering effect upon some people induced by stimulants to improvident frolicsomeness. That evidence, however, we do not regard as of much probative value in defense of the young man's sobriety in the face of his admissions and his own un-clear, confused and evidently inaccurate account of the events which occurred.

The facts which stand out in this controversy are that the accident occurred about three o'clock in the afternoon on Sunday, the 3rd day of November, 1929, about four and a half miles southward from Brunswick upon a public highway. The truck driven by Gandy, proceeding northward at a high rate of speed, crossed the highway, invaded the side of the road and area rightfully occupied by the automobile, crashed into it and injured two or more persons, and resulted in destroying the truck by fire. That Gandy had driven from Brunswick to Mrs. Carter's place, eaten lunch, procured a half pint of whisky, drank that with a bottle of orange crush as a chaser, got into his automobile and started back to Brunswick, covering the distance from Mrs. Carter's to the place of accident in a space of time impossible of determination.

Gandy's own statement that he traveled at an average rate of eighteen miles per hour and was traveling at the time of the accident at about thirty miles per hour is unreliable,

because according to his own testimony he left Mrs. Carter's about 3 P. M., at the hour when the accident occurred thirty-two miles up the road. If that statement can be believed and the uncontradicted statement of others as to the time he arrived at the doctor's office can be accepted then he arrived at the doctor's office before or at about the time the accident occurred. There is the further fact that he pleaded guilty and was fined about eighteen days afterwards in the civil court of Brunswick on a charge of drunkenness on the day of the accident.

Gandy's account of the transaction in many particulars shows that his memory of the incidents of that unfortunate accident in which he played such a disastrous part is unclear, unreliable and inaccurate to a high degree.

Our conclusion is that the plea was abundantly proved, that there should have been an instruction for the defendant, and that the judgment should be reversed. So ordered.

Davis, C. J., and Whitfield, Terrell, Brown and Buford, J. J., concur.